UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GAIL WOFFORD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PORTFOLIO RECOVERY ASSOCIATES LLC,<br><br>　　　　Defendant. | Case No.  24-cv-07509-RFL<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 34, 35, 37 |

Gail Wofford, who is proceeding without the benefit of counsel, initiated this lawsuit after receiving hundreds of calls from debt collector Portfolio Recovery Associates (PRA).  Her operative complaint alleges that these calls violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.  Specifically, Wofford alleges that the calls were made either using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice.  The parties have now filed cross motions for summary judgment.  Though Wofford's annoyance is understandable, she has not shown a genuine dispute of material fact regarding elements of her TCPA claims.  As further set forth below, PRA's motion for summary judgment is therefore **GRANTED** and Wofford's motion for summary judgment is **DENIED**.[1]

---

[1] PRA objects to considering Wofford's deposition errata and other evidence she submitted. Because consideration of this evidence does not alter the outcome, the objections are overruled as moot.  Wofford objects to considering the Siegel, Dreano, and Bakane declarations.  The objection to the Bakane declaration is overruled because it properly authenticates other documents.  The remaining objections are overruled because Siegel and Dreano have personal knowledge of what they declare and could testify to that knowledge at trial without hearsay.  *See* Fed. R. Civ. P. 56(c)(2).

1

***Residential Telephone Restriction.*** The TCPA contains multiple restrictions on the use of automated telephone equipment. 47 U.S.C. § 227(b)(1). The second restriction prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." § 227(b)(1)(B). A claim under this paragraph can therefore be broken down into three elements: calling (1) a residential telephone line; (2) using an artificial or prerecorded voice; (3) without the prior express consent of the called party. *Id.* If any of these elements are not met, the plaintiff does not have a viable claim. The first element is satisfied, as it is undisputed that PRA called Wofford's residential telephone line. (Dkt. No. 34-5 at 10–11; Dkt. No. 43 at 12.)[2]

However, there is no genuine dispute that PRA's calls did not use an artificial or prerecorded voice. PRA submitted a declaration by Laurence Siegel, an executive for LiveVox, whose company developed the PRA Manual Click calling platform that PRA uses. (Dkt. No. 34-6 ¶ 1–2.) PRA's calls to Wofford used the PRA Manual Click and LiveVox Manual Dial platforms; the latter "utilizes the same LiveVox cloud-based technology as the LiveVox PRA Manual Click technology but allows the customer service representative to manually dial the call." (Dkt. No. 34-1 ¶¶ 15–16; Dkt. No. 35-2 at 2–8.) According to Siegel, PRA Manual Click is not capable of using an artificial or prerecorded voice. (Dkt. No. 34-6 ¶ 14.) Wofford did not provide any evidence showing otherwise. (*See* Dkt. No. 34-5 at 24, 28.) In fact, Wofford conceded that her only evidence that PRA used an artificial or prerecorded voice is her own speculation based on LiveVox's other platforms having that functionality. (*Id.*; Dkt. No. 34-7 at 4; Dkt. No. 37-4 at 2–109.) But as opposed to the ATDS prohibition, all that matters here is whether the calls were actually made using an artificial or prerecorded voice. *Compare* § 227(a)(1) (ATDS defined as "equipment which has the capacity" to perform certain functions)*, with* § 227(b)(1)(B) (prohibiting initiating "any telephone call . . . using an artificial or prerecorded voice"). And speculation is insufficient to show a genuine dispute of material fact.

---

[2] All citations to page numbers refer to ECF pagination.

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

In opposing summary judgment, Wofford declared that she "[r]ecalled prerecorded messages." (Dkt. No. 42 at 7.)  But she never elaborated upon this self-serving conclusory statement, nor is there any other record evidence to support it.  Wofford conceded at her deposition that a child erased any PRA calls stored on her answering machine, so she has no recordings of any such calls.  (Dkt. No. 34-5 at 38.)  In fact, she testified that she had no documentary evidence that PRA used an artificial or prerecorded voice in making calls to her. (*Id.* at 28.)  She corrected this answer in her deposition errata, but even then, she only stated that "LiveVox's publicly available materials describe comprehensive [Interactive Voice Response] IVR functionality as an integrated component of the platform." (Dkt. No. 34-7 at 4.)  She went on to state that she "cannot testify with certainty about every specific call" with respect to artificial or prerecorded voices, and "cannot say with certainty" whether IVR functionality was activated during PRA's calls.  (*Id.*)  Moreover, when confronted with Siegel's declaration statement that PRA's LiveVox systems are incapable of using an artificial or prerecorded voice, she did not raise her memory of prerecorded messages.  (Dkt. No. 34-5 at 27–28.)  Considering PRA's evidence to the contrary, Wofford's conclusory assertion that she "[r]ecalled prerecorded messages," without any additional facts or evidence, does not preclude summary judgment.  (*See* Dkt. No. 42 at 7; *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").)

Since there is no genuine dispute as to the second element, it is unnecessary to determine whether Wofford gave prior express consent to the calls.  Wofford's claim would fail even if she did not give prior express consent.

***Cell Phone and Called Party Charged Restriction.***  As relevant here, the TCPA's first automated telephone equipment restriction prohibits making "any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging

3

service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." § 227(b)(1)(A). The elements of this claim are therefore: calling (1) a qualifying type of phone, which includes a cell phone or phone that charges the called party for the call; (2) using an automatic telephone dialing system (ATDS) or an artificial or prerecorded voice; (3) without the recipient's prior express consent. *Id.*; *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

There is no genuine dispute that PRA's calls were not made using an ATDS or an artificial or prerecorded voice. As previously discussed, there is no genuine dispute about whether PRA's calls were made using an artificial or prerecorded voice. An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1). Siegel declared that PRA Manual Click does not use an algorithm to engage in predictive dialing; does not have the capacity or potential capacity to auto-dial; does not have the capacity to generate random or sequential phone numbers; does not store telephone numbers; and requires every call to be manually launched. (Dkt. No. 34-6 ¶¶ 2, 8–17.) As a result, the systems used to call Wofford's phone are incapable of acting as an ATDS. (*See id.*; Dkt. No. 34-1 ¶¶ 15–16; Dkt. No. 35-2 at 2–8; § 227(a)(1).)

To argue otherwise, Wofford submitted copies of websites describing that LiveVox and NICE (which acquired LiveVox in 2023) offer platforms that can operate as an ATDS. (Dkt. No. 37-4 at 2–109.) But general evidence about LiveVox's varying platforms does not create a material dispute of fact about the LiveVox platforms used by PRA to call Wofford, which were expressly designed to have different features and run on different servers than LiveVox's other platforms. (*See* Dkt. No. 34-6 ¶¶ 2, 6.) "The fact that LiveVox offers multiple dialers to its customers does not bring every call that LiveVox makes within the scope of the TCPA." *Meier v. Allied Interstate LLC*, No. 20-55286, 2022 WL 171933, at *1–2 (9th Cir. Jan. 19, 2022). Although *Meier* is not binding because it was an unpublished decision, its reasoning is

persuasive.  To take one of Wofford's analogies: supposing a base LiveVox platform is like a car with an engine that can go 120 miles per hour (*i.e.*, operate as an ATDS), LiveVox installed a governor for PRA limiting the car to 60 miles per hour (preventing PRA from using LiveVox as an ATDS).  (*See* Dkt. No. 37-3 at 11; Dkt. No. 34-6 ¶¶ 2, 8–17.)  That car is not capable of going more than 60 miles an hour.  The relevant capabilities are those of PRA Manual Click, not those of other LiveVox platforms that PRA does not access.  Wofford also speculates that PRA Manual Click may have changed since Siegel's 2021 declaration, but she submits no evidence from which a factfinder could draw that conclusion.

Wofford has therefore not shown a genuine dispute of material fact regarding the second element.  Accordingly, it is again unnecessary to determine whether she has a qualifying form of phone or she gave prior express consent to the calls.

***Administrative Motions to Seal.***  The parties have filed unopposed motions to seal PRA's Call History, Telephone Source Document, and TCPA Policy.  (Dkt. Nos. 35, 37, 38.)  There is a compelling interest in sealing, so the motions are **GRANTED**.

***Conclusion.***  PRA's motion for summary judgment (Dkt. No. 34) is **GRANTED**.  Wofford's motion for summary judgment (Dkt. No. 37) is **DENIED**.  The administrative motions to seal (Dkt. Nos. 35, 37) are **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 16, 2026

RITA F. LIN
United States District Judge

5